**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
**Plaintiff,**

**v.** **Case No. 19-CR-127**

**JOHN BURGDORFF**
**Defendant.**

---

## DECISION AND ORDER

Defendant John Burgdorff moves for early termination of his supervised release. For the reasons that follow, his motion will be granted.

### I.

Defendant pleaded guilty to engaging in illicit sexual conduct in a foreign country. 18 U.S.C. § 2423(c). The charges arose out of the government's investigation into Donald Stenson, who engaged in sexual encounters with various girls in the Philippines in exchange for money and gifts. On executing a search warrant at Stenson's apartment, investigators found evidence of the encounters, including a video, and a chat with another man, later identified as this defendant, discussing the rate for various sex acts. (PSR ¶ 22.) The investigation revealed that Stenson introduced defendant to some of the minors identified in the indictment, and defendant had sexual contact with four of them. Investigators located and interviewed the girls, who confirmed that they met defendant through Stenson in 2017, that they had sexual encounters with him, and that he paid them; the girls were at the time 12-13, 15, 14-15, and 17-19 years old. (PSR ¶¶ 28-34.)

Defendant was 66 at the time of sentencing, with no prior record and an otherwise

positive background. He retired after 25 years as a computer programmer for an insurance company. He complied with bond in this case, including location monitoring and computer monitoring. He also participated in an assessment and treatment group. A risk evaluation report placed him in the below average risk category.

The sentencing guidelines recommended 108-135 months in prison, and I agreed that a period of confinement was needed to provide just punishment for this serious crime, to promote respect for the law, and to deter others from this kind of "sexual tourism," particularly involving poor young girls like the victims here, easily manipulated with money, food and gifts. On the mitigating side, I noted that defendant got into this through Stenson; he was not seeking these girls out on his own. I further noted that he was 66 years old, had no prior record, and appeared to show genuine remorse. The risk assessment report confirmed a lower risk of recidivism, he complied with bond, and he voluntarily participated in an assessment and group therapy program.

Under all the circumstances, I found a sentence of 30 months' imprisonment sufficient but not greater than necessary to satisfy the purposes of sentencing. I further ordered defendant to serve a supervised release term of five years, the mandatory minimum, with, inter alia, sex offender treatment and search conditions. Finally, I ordered him to pay $5100 in assessments and $32,000 in restitution.

Defendant completed the prison sentence and commenced supervision on June 21, 2024. He filed the instant motion, pro se, on August 13, 2026. The government has responded and defendant, through counsel, replied.

**II.**

The district court may, after considering the pertinent sentencing factors in 18 U.S.C. §

3553(a), terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervision if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice. 18 U.S.C. § 3583(e)(1); see also U.S.S.G. § 5D1.4(b). The district court possesses wide discretion in determining whether termination would be in the interest of justice. United States v. Hook, 471 F.3d 766, 771 (7th Cir. 2006). In exercising that discretion, however, courts have generally concluded that the conduct of the defendant sufficient to warrant termination should include more than mere compliance with the conditions of supervised release, as that is what is expected of persons on supervision. United States v. Habib, No. 18-CR-16, 2026 U.S. Dist. LEXIS 98768, at *1 (E.D. Wis. May 5, 2026); see also United States v. Taylor, 729 Fed. Appx. 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination under 18 U.S.C. § 3583(e)."). Courts have tended to grant early termination in cases involving some new or unforeseen circumstance, which may include exceptionally good behavior, or where continued supervision would hinder rather than foster the defendant's rehabilitation. Habib, 2026 U.S. Dist. LEXIS 98768, at *2.[1]

Additional guidance can be found in the applicable policy statement from the Sentencing Commission, which suggests the court consider: (i) any history of court-reported violations over

---

[1]This is not to say that the defendant must always demonstrate exceptional circumstances in order to gain early termination. The above summary is descriptive of the manner in which courts have exercised their discretion in considering such motions. United States v. Edmonds, No. 05-CR-41, 2018 U.S. Dist. LEXIS 78092, at *3 n.1 (E.D. Wis. May 9, 2018). Nothing in the text of § 3583(e)(1) constrains a court's discretion to grant early termination in only "exceptional" cases. See United States v. Shaw, 611 F. Supp. 3d 1170, 1176 (D. Colo. 2020); see also United States v. Crisp, 770 F. Supp. 3d 1124, 1139 (C.D. Ill. 2025) (questioning the line of cases applying a "perfect conduct plus" standard for early termination).

the term of supervision; (ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges); (iii) the defendant's substantial compliance with all conditions of supervision; (iv) the defendant's engagement in appropriate pro-social activities and the existence or lack of pro-social support to remain lawful beyond the period of supervision; (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant. U.S.S.G. § 5D1.4 cmt. n.1(B).

The defendant bears the burden of demonstrating that early termination is warranted. United States v. George, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). The court need not hold a hearing before ruling on such a request. United States v. Reagan, 162 Fed. Appx. 912, 913 (11th Cir. 2006) (citing United States v. Nonahal, 338 F.3d 668, 671 (7th Cir. 2003)).

Finally, the record must reveal that the court gave consideration to the § 3553(a) factors, although the court need not make explicit findings as to each one. United States v. Lowe, 632 F.3d 996, 998 (7th Cir. 2011). Those factors include the nature and circumstances of the offense, and the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the applicable sentencing guidelines and policy statements issued by the Sentencing Commission;

the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3583(e) (citing 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), & (a)(7)). Significantly, the list omits § 3553(a)(2)(A), suggesting the court should not in ruling on a motion for early termination of supervised release consider the need to punish. See Crisp, 770 F. Supp. 3d at 1135; see also Esteras v. United States, 606 U.S. 185, 195 (2025) ("District courts cannot consider §3553(a)(2)(A) when revoking supervised release.").

**III.**

**A.**

In his pro se motion, defendant indicates that he has learned a lot about himself since his arrest in December 2019. He attended sex offender group therapy for nine months prior to being sentenced, then completed an 11-month program at FCI Elkton, learning how the distorted beliefs he developed in the past led to the offense; he also learned the skills to help become a better person and not re-offend. Defendant indicates that he has complied with the requirements of supervision, including successful polygraph tests and a therapy program. His family and friends are aware of his conviction, and they continue to help him follow the conditions of supervision. Two of them have been trained to be chaperons so he can attend family events where minors might be present. (R. 198 at 1.)

Defendant states that once released from supervision he will have more freedom to pursue his goals to develop and maintain new, healthy relationships. He will also regain the rights to vote and travel. Defendant concludes that he now has the skills to make better choices

and live an offense free life. (R. 198 at 1.)

The government confirms that defendant has completed treatment programs and otherwise complied with his conditions. (R. 200 at 3.) The government nevertheless opposes early termination under the § 3553(a) factors, stressing the seriousness of the offense and the ongoing need to protect the public and deter criminal conduct. (R. 200 at 4.) The government further argues that granting termination would create unwarranted disparity with other offenders subject to mandatory supervision terms under 18 U.S.C. § 3583(k). (R. 200 at 4-5.) Finally, the government argues that defendant fails to prove the interest of justice warrants early termination. While defendant has remained compliant, "that only demonstrates that supervision is working and that he would benefit from additional supervision . . . to ensure that he continues on a path towards rehabilitation." (R. 200 at 5.) Defendant's specific reasons for seeking termination—to forge new relationships, regain his voting rights, and travel—are not, the government contends, the kinds of new or unforeseen circumstances that warrant the relief he requests. And, given the extraterritorial nature of his offense, the government contends he should be required to complete the full five-year term of supervised release before he attempts to travel again. (R. 200 at 5.) The government concludes that defendant can accomplish his goals while remaining on supervision, and that his mere compliance does not support early termination. (R. 200 at 6.)

In reply, filed by counsel, defendant further fleshes out his request, noting that he has complied with sex offender registration and fully paid the $5100 in assessments and $32,000 in restitution ordered by the court. While at FCI Elkton, he participated in and completed another sex offender treatment program, and on release he completed a relationship program not required by his conditions. Defendant states that, at the time he filed his motion, he

believed that his supervising probation officer supported early termination. (R. 203 at 2.)

As indicated in an attachment to the reply, after defendant filed the motion the probation officer updated the government, noting defendant's full compliance, including completion of sex offender treatment and aftercare, passing his polygraph test, and completing computer monitoring, with random searches revealing no violations. (R. 203 at 5; R. 203-1 at 2.) Defendant maintained contact with his family, and they have been approved as chaperones for him during outings. He completed safety plans when needed and was able to identify situations that would require him to adjust his involvement or participation in social situations. (R. 203-1 at 2.) The officer further noted that, through treatment in the BOP and on supervision, defendant had been able to view his conduct differently, showing remorse and empathy for his victims. A family friend reported that defendant was too anxious of a person to do anything against the law ever again and often hesitated to even go out because of worry he would be in violation of either the law or his supervision. The officer concluded: "I would support an early termination if the Court finds it appropriate, but would also understand that [defendant's] crime committed is serious and continued supervision to monitor progress and promote community safety could be an appropriate response by the Court." (R. 203-1 at 3.) In a follow-up communication, the probation officer noted that defendant was not currently enrolled in any services, as he had completed treatment and computer monitoring requirements; he could in the future be referred to services as needed, based on either his request or issues related to compliance. (R. 203-1 at 1.)

Defendant argues in reply that the court found he posed a limited risk at the time of sentencing and, given his completion of programming and increased awareness of concerning situations, that risk is even lower now. He will, after supervision ends, be required to comply

with sex offender registration, providing a further deterrent. He has no additional treatment needs that could be served by continued supervision. (R. 203 at 4.) And, he has exceptional family support to assist him going forward. (R. 203 at 4-5.)

**B.**

Defendant has by any measure done quite well on supervision, demonstrating more than bare compliance. In addition to avoiding violations, he has completed treatment and the computer monitoring program. He has further shown the ability "to lawfully self-manage," i.e., identify problematic situations and complete safety plans. He appears to have developed a strong pro-social support network. His completion of treatment programs has further reduced his risk level. The underlying offense arose out of his relationship with Stenson, now ended. Defendant has no other record, and his conduct while incarcerated and on supervision suggests that termination would not jeopardize public safety. See U.S.S.G. § 5D1.4 cmt. n.1(B). Accordingly, while defendant's claim that supervision interferes with his ability to travel and develop new relationships would not alone support his request, his conduct demonstrates that termination would be in the interest of justice. There is no reason to believe continued supervision is necessary to further his rehabilitation or ensure that he can manage his life lawfully. Importantly, the supervising probation officer responded favorably to the request.

The § 3553(a) factors also support early termination. Defendant's offense involved vulnerable young girls, but there is no reason to believe further supervision is necessary to protect the public, given his completion of programming and greater insight. See 18 U.S.C. §§ 3553(a)(1), (a)(2)(C). It appears this process has had a significant impact on him, such that continued supervision is also not necessary to deter him from further violations of law. See 18 U.S.C. § 3553(a)(2)(B). Any remaining risk can be ameliorated by registration requirements.

Defendant requires no further correctional treatment, and the probation office currently provides him no such services. See 18 U.S.C. § 3553(a)(2)(D). As discussed above, the factors identified by the Sentencing Commission support relief. See 18 U.S.C. §§ 3553(a)(4) & (5); U.S.S.G. § 5D1.4. And defendant has satisfied all court-ordered financial obligations, including restitution. See 18 U.S.C. § 3553(a)(7).

The government suggests that granting termination at this point, where defendant has completed less than one-half of the required term, would create disparity with other offenders convicted of offenses covered by 18 U.S.C. § 3583(k). See 18 U.S.C. § 3553(a)(6). However, the district court may (after one year) terminate even a mandatory term of supervised release if the criteria of § 3583(e)(1) are satisfied. See Pope v. Perdue, 889 F.3d 410, 414 (7th Cir. 2018); Crisp, 770 F. Supp. 3d at 1138; see also United States v. Donavan, No. 4:10-CR-40054-JEH-RLH, 2026 U.S. Dist. LEXIS 261349, at *10 (C.D. Ill. Nov. 15, 2026) ("The length of time served may be considered, but only as part of an individualized assessment of the statutory factors."). By affording district courts such discretion, Congress must have determined that, if the § 3583(e)(1) standards are met, any disparity would not "unwarranted." For the reasons stated, the statutory requirements are met here.

## IV.

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 198) is granted, and his supervised release is terminated effective immediately.

Dated at Milwaukee, Wisconsin, this 25th day of November, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge